IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LETICIA MONTELONGO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | EP-09-CV-388-KC |
| | § | |
| HOUSING AUTHORITY CITY OF EL PASO, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

On this day, the Court considered Plaintiffs' Motion for Expedited Notice to Potential Plaintiffs and to Toll the Statute of Limitations ("Motion") (Doc. No. 14). For the reasons set forth below, the Motion is **GRANTED** in part.

**I.   BACKGROUND**

Defendant operates housing properties in the El Paso, Texas, area. *See* Pls.' Orig. Compl. ("Compl.") ¶ 16. Plaintiffs are current and former "housing managers," "asset managers" and "assistant managers" in the employ of Defendant. *Id.* Plaintiffs filed the instant suit on October 23, 2009, alleging that Defendant failed to pay them appropriate overtime wages for weeks in which they worked more than forty hours. *See id.* They also allege that other current or former employees of Defendant are similarly situated, and therefore seek to make this suit a collective action. *See id.* ¶ 3; *see also generally* Brief in Supp. of Pls.' Mot. ("Brief") (Doc. No. 14-1). As a collective action suit for unpaid overtime wages is conducted on an "opt-in" basis, Plaintiffs are seeking authorization of this Court to issue notice to other potential claimants who may be interested in opting-in to the instant suit. Brief 3. To that end, they filed the instant Motion on

-1-

June 23, 2010.  *See generally* Mot.  Defendants have not filed a response.  Plaintiffs also seek to toll the statute of limitations that would be applied to any prospective plaintiffs who opt-in to this suit at a later point in time.  *See* Brief 9-11.  The Court addresses the notice issue in this Order, and will address the statute of limitations tolling issue in a separate order.

II.     DISCUSSION

   A.     Standard

Section 216(b) of the Fair Labor Standards Act ("FLSA") authorizes plaintiffs seeking relief under the FLSA to bring a collective action on behalf of themselves and similarly situated persons, subject to the requirement that any person wishing to become a party must opt into the action by filing their consent with the court in which the action is bought.  29 U.S.C. § 216(b).  By contrast, in a class action, such as one under Rule 23(b)(3) of the Federal Rules of Civil Procedure, a person must take affirmative measures to opt out of the action.  *See* FED. R. CIV. P. 23(c)(2)(B)(v).  The logical result of either procedure is a strong tendency, on the part of individual claimants, towards the course of least resistance – not opting to change the legal status quo, whatever it might be.  *See generally* Edward H. Cooper, *The (Cloudy) Future of Class Actions*, 40 ARIZ. L. REV. 923, 936 (1998) ("Inertia, the complexity of class notices, and the widespread fear of any entanglement with legal proceedings will lead many reluctant class members to forgo the opportunity to opt out, and likewise will deter many willing class members from seizing the opportunity to opt in.").

The difference between class actions under Rule 23 and collective actions under section 216(b) is "fundamental [and] irreconcilable," as under the latter "no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class." *La Chapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th

Cir. 1975). As a result, a plaintiff may not bring group FLSA claims through a Rule 23 class action, because the statute makes a section 216(b) collective action the exclusive method for litigating such claims. *Id.* However, the only guidance that the text of the FLSA provides on the standard for inclusion in a section 216(b) collective action is that all plaintiffs must be "similarly situated." 29 U.S.C. § 216(b).

Courts currently recognize two methods of determining whether to authorize notice to potential parties in a FLSA collective action. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-15 (5th Cir. 1995) (explicitly declining to endorse either method). The first method, typified by *Lusardi v. Xerox Corp.*,[1] involves a two-step approach to determining whether proposed plaintiffs are similarly situated. At the first step, a court conditionally certifies a class if there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.7 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd*, 493 U.S. 165 (1989)). This standard is "fairly lenient" and "typically results" in conditional certification. *Mooney*, 54 F.3d at 1213. At the second step, "precipitated by a motion for 'decertification' by the defendant [and] usually filed after discovery is largely complete . . . the court has much more information on which to base its decision" as to whether plaintiffs are similarly situated, and may proceed to decertify the class if they are not. *Id.* at 1214.

---

[1] *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), *mandamus granted in part and appeal dismissed sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3rd Cir. 1988), *modified in part*, *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988), *aff'd in part, appeal dismissed*, *Lusardi v. Xerox Corp.*, 975 F.2d 964 (3rd Cir. 1992). While Lusardi does not fully articulate the method it has come to stand for, that method has been dubbed the "Lusardi analysis" by later cases. *See, e.g., Mooney*, 54 F.3d at 1213 n.6.

Under the second method, a court simply looks to Rule 23 factors – "numerosity," "commonality," "typicality" and "adequacy" – to determine class certification, without dividing the process into two steps. *Id.*

Plaintiffs urge the Court to adopt the two-step approach. *See* Brief 4-5. Indeed, this Court generally elects to utilize the two-step *Lusardi* approach, rather than the one-step Rule 23 approach, and so elects in this case. *See Escobedo v. Dynasty Insulation, Inc.*, No. EP-08-CV-137 (W.D. Tex. Sept. 19, 2008) (order certifying a FLSA class under the two-step approach). The leniency of the certification standard at the first stage of the *Lusardi* analysis is balanced by the onus that the terms of section 216(b) place on potential parties to affirmatively opt-in to a collective action. *Id.* A potential plaintiff in a section 216(b) collective action who takes no steps to be part of the class effectively screens himself or herself out without a court needed to do so. *Id.* As a result, an affected individual who is in the best position to decide whether he or she is similarly situated to the named plaintiffs has the opportunity to make this decision affirmatively, yet the Court retains the option to decertify the class later, if it disagrees. *Id.*

While the first step of the *Lusardi* approach is lenient, it is by no means automatic. *See Badgett v. Tex. Taco Cabana, L.P.*, No. H-05-CV-3624, 2006 U.S. Dist. LEXIS 74530, at *5 (S.D. Tex. Oct. 3, 2006). "[E]mployers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense." *H&R Block v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (quoting *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)). Courts have arrived at notably varying conclusions in applying this standard. *Compare Bursell v. Tommey's Seafood Steakhouse*, No. H-06-CV-386, 2006 U.S. Dist. LEXIS 80526 (S.D. Tex. Nov. 3, 2006) (granting conditional class certification for a class of all employees of a restaurant between 2003 and 2006 based on statements of two former employees)

*with H&R Block*, 186 F.R.D. 399 (denying conditional class certification based on statements of two former employees). At the very least, it is clear from the relevant case law that courts must strive to balance the efficiency of aggregating claims in one action against the expense and inconvenience of frivolous litigation.

B.   Analysis

The Court will first address the conditional certification of the proposed class. It will then address the particular requests related to furnishing notice of this suit to potential class members.

1.   **Conditional certification**

Courts will conditionally certify a FLSA collective-action class if there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.7. Three factors are usually considered as part of the conditional certification step. There must be reasonable basis for believing that (1) aggrieved individuals exist; (2) the aggrieved individuals are similarly situated to the named plaintiff(s) in ways relevant to the FLSA claims at issue; and (3) at least some of those individuals want to opt into the suit. *See Tolentino v. C & J Spec-Rent Servs., Inc.*, --- F. Supp. 2d. ----, No. C-09-CV-326, 2010 WL 2196261 (S.D. Tex. May 26, 2010).

In the instant case, Plaintiffs have mustered sufficient evidence to meet the "fairly lenient" burden imposed by the conditional certification step. *Mooney*, 54 F.3d at 1213. Plaintiffs have brought three sworn declarations stating that some number of workers classified as "housing or asset managers and assistant managers" were required to work more than forty hours per work week and were not properly compensated for their overtime. *See* Decl. of Leticia Montelongo ("Montelongo Decl.") ¶¶ 4-5 (Doc. No. 14-2 Ex. 1); *see also* Decl. of Pablo Puente ("Puente Decl.") ¶¶ 4-5 (Doc. No. 14-2 Ex. 2); *see also* Decl. of Manuela Perez ("Perez Decl.") ¶¶ 4-5

(Doc. No. 14-2 Ex. 3).[2] Each of the declarants claims to have had numerous years of experience working for Defendant, and claims to have gained knowledge of these wage underpayments through personal experiences and observations, as well as contact with co-workers. Decls. ¶ 3, 5. The declarants also state that the functions and duties of workers bearing the titles of "housing manager," "assistant housing manager," "asset manager" and "assistant housing managers" were essentially equivalent, suggesting that they received similar treatment in terms of working conditions and pay. *See* Decls. ¶ 6. Finally, the declarants state that these similarly situated individuals are interested in joining the instant suit. *See* Decls. ¶ 7. All of this uncontradicted evidence satisfies the three traditional factors and thus gives rise to an inference that workers bearing the aforementioned job titles were subject to a "single decision, policy, or plan" in connection with their overtime pay, and are therefore similarly situated under section 216(b). *Sperling*, 118 F.R.D. at 407. The Court therefore conditionally certifies the proposed class.

### 2.  Notice to potential class members

Plaintiffs also seek permission of the Court to send notice to potential class members, and expedited discovery of information to help them identify and contact potential class members. The Supreme Court has held that district courts can, and often should, involve themselves in structuring the notices that are furnished to potential class members who may be in a position to opt into a collective action. *See Sperling*, 493 U.S. at 171 (observing that "trial court involvment in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute" and holding that it "lies within the discretion of the trial court to begin its

---

[2] Each of the Declarations cited here is in nearly identical form. Accordingly, these documents may sometimes be cited collectively as the "Declarations," and any reference to a particular paragraph number is meant as a reference to that paragraph in each of the individual Declarations.

involvement early, at the point of initial notice"). Accordingly, district courts may review the form of the proposed notice, set a cut-off date for potential plaintiffs to join the suit, and authorize discovery of information related to locating potential class members. *See id.* at 170-72.

### a. Form of proposed notice

Plaintiffs have filed a form of proposed notice to potential class members, as well as a proposed form of an opt-in consent return for the use of any such interested class members. *See* Pl.'s Mot. Exs. 4-5 (Doc. No. 14-2 at 6-10). Upon due consideration, the Court finds that these proposed forms are adequate for the purposes of informing potential class members of the pendency of this suit, their rights to opt-in to it, and the effects of choosing to opt-in or not. Furthermore, these forms adequately inform potential class members that Defendant disputes the claims at issue and that the Court expresses no opinion as to the ultimate merits of the case or the ultimate validity of the conditionally-certified class. *See id.*; *see also Eggelston v. Sawyer Sportsbar, Inc.*, No. H-09-CV-3529 (S.D. Tex. July 9, 2010) (order approving similar notice and opt-in forms). Accordingly, the Court approves of the form of proposed notice and the proposed opt-in form. Plaintiffs are authorized to send such notices by U.S. mail as soon as they deem it practicable, but shall deposit all such authorized notices at the Post Office on the same day. Plaintiffs shall file notice with the Court of their depositing such notices within three days of having done so.

### b. Cutoff date

Plaintiffs propose that opt-in returns from prospective class members be postmarked no more than sixty (60) days from the date that the notices are mailed, if they are to be deemed timely for the purposes of joining the instant suit. *See* Brief 8. The Court finds that this is a reasonable time-frame and adopts it as follows:

1. The deadline for postmarking the opt-in returns shall be sixty (60) calendar days from the date the notices are sent by the Plaintiffs to the potential class members, inclusive of such sending day.

2. Any papers sent to potential class members shall have the deadline for postmarking the returns spelled out as a date certain, and not specified in terms of an interval of time related to some other date.

3. If the aforementioned postmark deadline shall fall on a date for which there is no scheduled Post Office service, then the postmark deadline shall be extended to the next succeeding day on which Post Office service is scheduled.  This later date shall be noted as the return postmark deadline on any notices sent to potential class members.

4. Plaintiffs shall inform the Court of this postmark deadline as part of their notice to the Court described above in subsection (a).

   **c.**  **Discovery of identity of potential class members**

Plaintiffs request expedited discovery of information to be used to identify and contact potential class members.  Plaintiffs in FLSA class actions are permitted to use discovery for such purposes.  *See Sperling*, 493 U.S. at 171.  District courts commonly grant expedited discovery of such information to Plaintiffs in order to enable efficient joinder of interested parties at an early stage in the case.  *See Eggelston*, (S.D. Tex. June 28, 2010) (order conditionally certifying class and granting expedited discovery of information relating to the identity of potential class members).  Plaintiffs have specifically requested the full name, the last known address, and the social security number of each putative class member.  Brief 8.  Plaintiffs specifically aver that the social security numbers are needed to identify the current addresses of any persons who have

moved away from their last known address. *Id.* n.11.

The Court finds that this discovery request is well taken, and therefore grants it subject to the following conditions:

1. Defendants shall have fourteen (14) calendar days to turn over the identifying information specified above to Plaintiffs' attorneys.

2. Defendants shall turn over the information in a reasonable electronic format.

3. Plaintiffs' attorneys shall use the furnished social security numbers only for the purposes of obtaining the current addresses of the putative class members, and shall promptly delete and destroy any record of these numbers once the current addresses are verified.

4. Plaintiffs' attorneys shall use all commercially reasonable privacy and data security measures to safeguard the personal information furnished by Defendant, as well as any such measures required by law.

### III. CONCLUSION AND ORDERS

For the reasons set forth above, Plaintiffs' Motion (Doc. No. 14) is **GRANTED** in part. The Court hereby enters the following orders:

1. The Court **ORDERS** that the following class is conditionally certified for the purposes of the instant suit:

**"All of Defendant's current and former non exempt 'housing managers or assistant managers' or non exempt 'asset managers or assistant managers,' regardless of pay structure, working between October 2006 and the present."**

2. The Court **ORDERS** Defendant to turn over to Plaintiffs' attorneys the requested identifying information, subject to the conditions set forth above in Section II(B)(2)(c), and **ORDERS** Plaintiffs' attorneys to abide by all the restrictions set

forth therein.

3. The Court **ADOPTS** the cut-off date for the opt-in returns proposed by Plaintiffs, as modified in Section II(B)(2)(b).

4. The Court **AUTHORIZES** Plaintiffs to send notice to potential class members, at their earliest convenience, using the proposed forms approved above in Section II(B)(2)(a). The Court **ORDERS** Plaintiffs to comply with the conditions set forth above in Sections II(B)(2)(a) and (b) when sending such notice.

5. The Court **ORDERS** Plaintiffs to file notice with the Court within three (3) days of their sending the notices to potential class members. Such filing shall specify the date on which the notices were sent, the precise class of mailing by which they were sent, and the specific cut-off date that was propounded, in said notices, to the potential class members.

**SO ORDERED**.

**SIGNED** on this 16th day of July, 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE